FILED

2017 JAN -3 PM 3:36

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INFORMATION |
| Plaintiff, | ) | 1 17 CR 0002 |
| v. | ) | |
| | ) | CASE NO.________________ |
| DAVID WINTERMYER, | ) | Title 18, United States Code, Sections 1341 (Mail Fraud) and 2 (Aiding and Abetting) |
| Defendant. | ) | |

The United States Attorney charges:

JUDGE BOYKO

## I. GENERAL ALLEGATIONS

At all times material to this Information:

1. Defendant DAVID WINTERMYER ("Defendant") resided in the Northern District of Ohio.

2. Paul L. Shockley ("Shockley") resided in the Northern District of Ohio.

3. Victim 1 and her husband, Victim 2, resided in the state of New York. Victim 3 and her husband, Victim 4, also resided in the state of New York. Victim 3 is a daughter of Victim 1 and Victim 2.

4. Shockley, Defendant and others established certain businesses, including D'Legato Estates and Facilities LLC, D'Legato Group LLC, and Wintermyer and Shockley Enterprise LLC (together, "D'Legato"). D'Legato was purportedly a start-up business venture that would engage in the business of operating an assisted living center.

5. Shockley was in a personal relationship with Defendant. Shockley, Defendant, A.W. (Defendant's mother) and others were purportedly responsible for establishing and operating D'Legato.

6. Shockley, Defendant and others caused D'Legato to open and maintain a bank account, account *6847, at Huntington National Bank (the "D'Legato Bank Account").

7. Shockley, Defendant and others caused D'Legato to open and maintain credit card accounts at U.S. Bank, N.A. (together, the "D'Legato Credit Card Accounts").

## II. COUNT 1, MAIL FRAUD, 18 U.S.C. § 1341

8. From approximately 2013 through 2015, Shockley, Defendant and others known and unknown to the United States Attorney devised a scheme to defraud Victim 1 and her family (together, the "investors"), and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises by, among other things, causing the investors to invest in D'Legato through false and fraudulent misrepresentations and omissions of material facts about the nature and dispositions of the investments.

9. It was part of the scheme that:

a. Shockley and Defendant misled investors to believe that their funds would be used to establish and operate D'Legato, when, in fact, they intended to divert and did divert the funds to enrich themselves;

b. To induce investors to invest in D'Legato, Shockley and Defendant promised investors that any D'Legato investment would realize a substantial return, when as they then well knew, it would not;

c. To provide a false sense of security to investors, Shockley and Defendant claimed that D'Legato (i) had in place other investors, (ii) had purchased certain

properties, and (iii) had employees or staff, when they then well knew, they did not have other investors, had not purchased certain properties, and did not have employees or staff; and

d. While continuing to lead the investors to believe a substantial return on their investments was forthcoming, when, in fact, it was not, Shockley, Defendant and others misused investor money to personally enrich themselves by paying for, among other things, personal expenses, gambling, luxury car payments, exotic vacations, and luxury shopping sprees.

10. The investors did not receive the hundreds of thousands of dollars of gains on their investments that Shockley and Defendant falsely promised to them during the scheme.

11. While Shockley had devised and executed the fraudulent scheme beginning in or around 2013, Defendant learned the criminal nature of, and began to participate in and further, the scheme in or around August 2014.

In furtherance of the scheme:

12. Shockley and Defendant urged the investors to invest funds in D'Legato. Shockley and Defendant represented to the investors that D'Legato was an assisted living business and that Shockley, Defendant and A.W. would be responsible for establishing and operating D'Legato. In fact, however, neither Shockley, Defendant nor A.W. had ever owned or operated any facility as an assisted living center.

13. Shockley and Defendant falsely represented to the investors that their funds would be invested in D'Legato, when they then well knew they intended to divert and did divert the funds to personally enrich themselves. Shockley and Defendant falsely promised the investors they would make a substantial return on their investment in D'Legato. Shockley and

Defendant also made material omissions of fact to the investors including that they never told the investors they intended to, and in fact did, use their D'Legato investment funds to personally enrich themselves and others.

14. Through these materially false representations and omissions, Shockley and Defendant caused Victim 1 and Victim 2 to liquidate their retirement savings to invest in D'Legato.

15. In order to create a false sense of urgency for the investors and cause them to invest additional funds in D'Legato, Shockley and Defendant falsely represented to the investors that a large investor had pulled out of D'Legato, and without additional funds from the investors, D'Legato would fail, and the investors would lose their substantial investments.

16. Based on these false representations and omissions, the investors invested substantial amounts of money into D'Legato. Between in or around August 2014 and October 23, 2014, during the period of time in which Defendant knowingly participated in and furthered the scheme, the investors mailed five (5) investment checks, totalling $54,500, through U.S. mail and private commercial carriers from New York to the Northern District of Ohio. The checks were drawn upon personal financial accounts in the names of the investors. Defendant deposited the investment checks into the D'Legato Bank Account, including on or about August 15, 2014, when he deposited check #165, drawn on the account of Victim 1 and Victim 2, into the D'Legato Bank Account.

17. The investors never received any return on the investment they made with D'Legato. Rather, Shockley, Defendant and others personally enriched themselves by using the investment money in the D'Legato Bank Account to make payments on the D'Legato Credit Card Accounts on which Defendant and others made significant personal expenditures.

18. On or about August 15, 2014, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant DAVID WINTERMYER, for the purpose of executing the scheme and artifice, caused check #165 from the account of Victim 1 and Victim 2 made payable to D'Legato Properties to be delivered by the United States Postal Service and private and commercial interstate carrier, from New York to the Northern District of Ohio, in accordance with the directions thereon.

In violation of Title 18, United States Code, Sections 1341 and 2.

CAROLE S. RENDON
Acting United States Attorney

By: ANN C. ROWLAND
Deputy Criminal Division Chief